UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| PETER LYKINS and MARIA LYKINS,<br><br>Plaintiffs<br><br>v.<br><br>LAS VEGAS METROPOLITAN POLICE DEPARTMENT and DORI KOREN,<br><br>Defendants | Case No.: 2:22-cv-01068-APG-BNW<br><br>**Order Granting in Part Defendants' Motion to Dismiss**<br><br>[ECF No. 6] |

Plaintiffs Peter and Maria Lykins sue the Las Vegas Metropolitan Police Department (LVMPD), Captain Dori Koren, and several unknown officers for claims arising out of the Lykins' arrest after Maria filmed officers detaining their son. The Lykins allege First, Fourth, and Fourteenth Amendment violations under 42 U.S.C. § 1983, free speech and excessive force violations under the Nevada Constitution, and state law claims for negligent hiring and training, battery, assault, false arrest and imprisonment, intentional infliction of emotional distress (IIED), negligence causing bodily injury, and negligent infliction of emotional distress (NIED). ECF No. 1-3. LVMPD and Captain Koren move for partial dismissal on various grounds, and the Lykins oppose. ECF Nos. 6; 10. I grant LVMPD and Captain Koren's motion in part, as set forth below.

I. BACKGROUND

The Lykins allege that on May 31, 2020, their son and his friends went to the Las Vegas Strip to take photographs at Caesar's Palace. ECF No. 1-3 at 11. The group was instead detained by LVMPD officers monitoring protests in the area following the death of George Floyd. *Id.* Peter and Maria drove to the area, spoke with officers, and asked if they could take their son home. *Id.* at 11-12. The Lykins allege that officers told them their son was being detained and

would be processed at the Regional Justice Center, and they needed to leave. *Id.* at 12. As they were walking away, Maria started recording the officers on her phone. *Id.* Shortly thereafter, Peter and Maria heard a volley of "pepperballs, rubber bullets, and/or other projectiles being fired at them," striking Peter three times in the back. *Id.* at 12-13. The Lykins allege a second volley grazed Maria on the arm, which caused Peter to shout profanities at the officers, who then allegedly fired a third volley. *Id.* at 13-14. Peter and Maria left the area and continued walking to their vehicle, and a short time later a minivan with several officers pulled up nearby. *Id.* at 17. Officers allegedly took Maria's phone and grabbed her arms, forcibly seized Peter, arrested them both, and detained them overnight in the Clark County Detention Center. *Id.* at 17, 20. They were released the next day and all charges against them were dropped. *Id.* at 20.

The Lykins filed this lawsuit in state court on May 27, 2022, and the defendants removed. ECF Nos. 1; 1-3. The Lykins primarily allege that officers either used excessive force against them or failed to intervene, retaliated against them for recording the events, unlawfully arrested them, and that LVMPD is liable because it promulgated a policy of unlawful policing tactics. ECF No. 1-3 at 5-6. The complaint also seeks to hold Captain Koren liable as the incident commander who approved the use of force on the night the Lykins were arrested. *Id.* at 16.

## II. DISCUSSION

In considering a motion to dismiss, I take all well-pleaded allegations of material fact as true and construe the allegations in a light most favorable to the non-moving party. *Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1096 (9th Cir. 2017). However, I do not assume the truth of legal conclusions merely because they are cast in the form of factual allegations. *Navajo Nation v. Dep't of the Interior*, 876 F.3d 1144, 1163 (9th Cir. 2017). Mere recitals of the elements of a cause of action, supported by conclusory statements, do not suffice. *Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009).  A plaintiff must also make sufficient factual allegations to establish a plausible entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).  A claim is facially plausible when the complaint alleges facts that allow the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Iqbal*, 556 U.S. at 678.  When the claims have not crossed the line from conceivable to plausible, the complaint must be dismissed. *Twombly*, 550 U.S. at 570.

    **A.  *Official Capacity Claims Against Captain Koren (Claims 1, 2, 3, 4, 5, 6)***

        The defendants move to dismiss the official capacity claims against Captain Koren as redundant of the claims against LVMPD. ECF No. 6 at 4-5.  The Lykins do not oppose. ECF No. 10 at 5.  Official-capacity suits against government officials "represent only another way of pleading an action against an entity of which an officer is an agent." *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (quotation omitted).  "When both a municipal officer and a local government entity are named, and the officer is named only in an official capacity, the court may dismiss the officer as a redundant defendant." *Ctr. for Bio-Ethical Reform, Inc. v. L.A. Cnty. Sheriff Dep't*, 533 F.3d 780, 799 (9th Cir. 2008).  Because LVMPD is also named as a defendant, I dismiss the claims against Captain Koren in his official capacity.

    **B.  *Individual Capacity Claims Against Captain Koren (Claims 1, 2, 3, 4, 5, 6)***

        The defendants also move to dismiss the federal claims against Captain Koren in his individual capacity. ECF No. 6 at 5.  They argue the plaintiffs have not alleged sufficient facts for Captain Koren to be liable under a theory of either personal involvement or supervisory liability. *Id*.  The Lykins respond that they have sufficiently alleged both personal involvement, because Captain Koren may be one of the fifteen Doe Officers, and supervisory liability, because

Captain Koren authorized the use of force that evening. ECF No. 10 at 5-8. I dismiss the individual capacity claims against Captain Koren with leave to amend if facts exist to do so.

To establish liability under 42 U.S.C. § 1983, a plaintiff must show both violation of a right secured by the Constitution or laws of the United States, and that the violation was committed by a person acting under color of state law. *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138 (9th Cir. 2012). A plaintiff must also show "personal participation in the alleged rights deprivation: there is no respondeat superior liability under section 1983." *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). However, a plaintiff is not required "to allege that a supervisor was physically present when the injury occurred" to hold the supervisor liable. *Starr v. Baca*, 652 F.3d 1202, 1205 (9th Cir. 2011). Rather, supervisors may be "liable for: 1) their own culpable action or inaction in the training, supervision, or control of subordinates; 2) their acquiescence in the constitutional deprivation of which a complaint is made; or 3) for conduct that showed a reckless or callous indifference to the rights of others." *Hyde v. City of Willcox*, 23 F.4th 863, 874 (9th Cir. 2022) (quotation omitted).

The Lykins argue that because Captain Koren could be one of the Doe Officers, he may have personally participated in the alleged violations and it would be premature to dismiss the claims against him. ECF No. 10 at 6. However, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quotation omitted). The Lykins have not plausibly alleged facts indicating Captain Koren may have been one of the unknown Doe Officers. *See* ECF No. 1-3 at 21, 25, 32, 35. Although a plaintiff "should be given an opportunity through discovery to identify [] unknown defendants," there are no facts alleged indicating that Captain Koren was present that evening, and if discovery reveals him to be one of the unknown officers, then the

Lykins may move for leave to amend. *Wakefield v. Thompson*, 177 F.3d 1160, 1163 (9th Cir. 1999) (quotation omitted).

The Lykins also have not plausibly alleged sufficient facts to hold Captain Koren liable under a theory of supervisory liability. The Lykins bring § 1983 claims against him for excessive force and failure to intervene under the Fourth Amendment, and violation of the right to free speech, chilling speech, and retaliation under the First Amendment. They allege that as Incident Commander, Captain Koren authorized his subordinates, including the Doe Officers, to use "pepperballs, rubber bullets, and/or other projectiles, and/or other chemical agents and projectiles" in a manner that violated Metro's Use of Force Policy. ECF No. 1-3 at 21, 25. But the Lykins do not plausibly allege facts supporting their claim that Captain Koren authorized using force in a manner that violated LVMPD policy. The Lykins point to the Doe Officers' unconstitutional use of force, but there is no respondeat superior liability under § 1983, and Koren cannot be held liable simply because he was their superior. I therefore dismiss the federal claims against Captain Koren in his individual capacity with leave to amend if facts exist to do so.

### C. Substantive Due Process (Claim 6)

The defendants move to dismiss the Lykins' substantive due process claim alleging violations of the First and Fourteenth Amendments. They argue that claim is duplicative of the Lykins' separately pleaded First and Fourth Amendment claims. ECF No. 6 at 5-6. In response, the Lykins do not suggest that they allege distinct conduct that should be analyzed outside of the First and Fourth Amendments, but rather argue that dismissal is not appropriate at this stage because their substantive due process claim could prevail if their First and Fourth Amendment claims do not. ECF No. 10 at 8-9.

The Due Process Clause of the Fourteenth Amendment "guarantees more than fair process, and the 'liberty' it protects includes more than the absence of physical restraint." *Washington v. Glucksberg*, 521 U.S. 702, 719 (1997). However, "where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *County of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998) (quotation omitted).

The Lykins label their substantive due process claim as a violation of the First Amendment, but because they allege the "defendants harassed, cited, detained, arrested, and used excessive force against [them] without legal cause or justification," the substance of their claim appears to be Fourth Amendment violations. ECF No. 1-3 at 38. Given that the alleged conduct is covered by the Fourth Amendment, their claim must be analyzed under that Amendment rather than under a substantive due process approach. *Graham v. Connor*, 490 U.S. 386, 395 (1989). Their substantive due process claim also notes that the Lykins were "bystanders to peacefully assembled protestors." ECF No. 1-3 at 38. To the extent this is meant to allege a First Amendment violation, that Amendment, rather than substantive due process, also guides the analysis of that claim. *Hufford v. McEnaney*, 249 F.3d 1142, 1151 (9th Cir. 2001).

Because the analysis of the Lykins' substantive due process allegations does not differ from the analyses of the same allegations under their separate First and Fourth Amendment claims, they cannot prevail on one and lose on the other. And to that end, the Lykins cannot "double up" on relief under substantive due process in the event their First or Fourth Amendment claims are successful. *Ramirez v. Butte-Silver Bow County*, 298 F.3d 1022, 1029 (9th Cir. 2002). I therefore dismiss their substantive due process claim with leave to amend if facts exist to do so.

### D. Nevada Constitutional Claim for Excessive Force (Claim 8)

The defendants argue there is no private right of action for excessive force under Article 1 § 18 of the Nevada Constitution. ECF No. 6 at 6. As a result, they argue the Lykins' eighth claim must be dismissed.[1]

After the briefing was completed for this motion, the Supreme Court of Nevada ruled that "the self-executing search-and-seizure provision [in Article 1 § 18] of the Nevada Constitution contains a private cause of action to enforce its proscription." *Mack v. Williams*, 522 P.3d 434, 442 (Nev. 2022) (en banc). It is the defendants' burden to show a claim must be dismissed, and *Mack* does not foreclose the possibility that there is a private right of action for excessive force under the Nevada Constitution. I therefore deny the motion to dismiss the Lykins' eighth claim, without prejudice to the parties raising this argument again with the benefit of *Mack* as guidance.

### E. Negligent Hiring, Training, and Supervision (Claim 9)

The defendants next move to dismiss the negligent hiring, training, and supervision claim against LVMPD and Captain Koren. ECF No. 6 at 7-10. They argue LVMPD is entitled to discretionary immunity under Nevada Revised Statutes (NRS) § 41.032(2), or, alternatively, that the Lykins have not alleged sufficient facts to support their claim. *Id.* The Lykins respond that discretionary immunity does not apply because the defendants' actions were taken in bad faith. ECF No. 10 at 13-15. I dismiss the claim against both LVMPD and Captain Koren, with leave to amend if facts exist to do so.

---

[1] The defendants briefly reference the Lykins' seventh claim seeking damages for free speech violations under the Nevada Constitution. But because they do not argue there is no private right of action for free speech claims, I do not address that here.

7

NRS § 41.032 sets forth exceptions to Nevada's general waiver of sovereign immunity. It immunizes state officers, agencies, and political subdivisions from actions based on the "exercise or performance or the failure to exercise or perform a discretionary function or duty . . . whether or not the discretion involved is abused." Nev. Rev. Stat. § 41.032(2).  State actors are entitled to discretionary-act immunity in Nevada for decisions that (1) "involve an element of judgment or choice," and (2) are "based on considerations of social, economic, or political policy." *Paulos v. FCH1, LLC*, 456 P.3d 589, 595 (Nev. 2020) (en banc) (quotation omitted). Nevada looks to federal analogues when determining the scope of discretionary-act immunity. *Id.*  Federal courts have consistently held that "decisions relating to the hiring, training, and supervision of employees usually involve policy judgments of the type Congress intended the discretionary function exception to shield." *Vickers v. United States*, 228 F.3d 944, 950 (9th Cir. 2000) (collecting cases).  The Supreme Court of Nevada recently affirmed this view. *Paulos*, 456 P.3d at 596 (finding that Nevada's discretionary-function immunity barred plaintiffs' claims for negligent hiring, training, and supervision against LVMPD).  Here, the defendants' decisions to hire, train, and supervise the officers involved meets the two-part test: they involve an element of judgment, and are, by their nature, "susceptible to a policy analysis." *Id.* at 595-96 (quotation omitted).

The Lykins argue that "where an officer's actions are attributable to bad faith, immunity does not apply whether an act is discretionary or not." *Sandoval v. Las Vegas Metro. Police Dep't*, 756 F.3d 1154, 1168 (9th Cir. 2014) (quotation omitted).  Bad faith "involves an implemented attitude that completely transcends the circumference of authority granted the individual or entity." *Falline v. GNLV Corp.*, 823 P.2d 888, 892 n.3 (Nev. 1991).  It includes arrests done in an abusive manner "because of a willful or deliberate disregard for the rights of a

particular citizen," and acts that bear "no relationship to a rightful prerogative even if the result is ostensibly within the actor's ambit of authority." *Sandoval*, 756 F.3d at 1168-69 (quotation omitted). The Lykins argue that past incidents of LVMPD officers using excessive force demonstrate that LVMPD's decisions about training, supervision, and retention were done in bad faith. ECF No. 10 at 13-14. But conclusory allegations are not enough to survive a motion to dismiss, and the Lykins do not plausibly allege facts indicating that LVMPD's decisions evinced a "willful or deliberate disregard" for the rights of citizens. The Lykins also allege no facts indicating whether or how Captain Koren was involved in the training, supervision, or retention of the Doe Officers, or how he acted in bad faith. I therefore dismiss this claim against LVMPD and Captain Koren, with leave to amend if facts exist to do so.

### F. Emotional Distress (Claims 14, 16)

The defendants argue that Maria failed to sufficiently allege facts demonstrating she suffered emotional distress, so her intentional infliction of emotional distress (IIED) claim must be dismissed. ECF Nos. 6 at 10; 19 at 8. They also argue I must dismiss Peter and Maria's negligent infliction of emotional distress (NIED) claims because they failed to plead physical symptoms caused by the allegedly negligent acts. ECF Nos. 6 at 10-11; 19 at 9. The Lykins counter they do not have to plead physical symptoms of emotional distress because a relaxed pleading standard applies. ECF No. 10 at 17. I dismiss Maria's IIED and NIED claims with leave to amend, but I do not dismiss Peter's IIED and NIED claims.

#### 1. **IIED**

Under Nevada law, an intentional infliction of emotional distress claim requires three elements: "(1) extreme and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress, (2) the plaintiff's having suffered severe or extreme emotional

distress and (3) actual or proximate causation." *Dillard Dep't Stores, Inc. v. Beckwith*, 989 P.2d 882, 886 (Nev. 1999) (en banc) (quotation omitted). The parties dispute only whether the second element has been plausibly alleged. Generally, a plaintiff must "demonstrate that he or she has suffered some physical distress in order to support an award of emotional damages." *Betsinger v. D.R. Horton, Inc.*, 232 P.3d 433, 436 (Nev. 2010) (en banc). However, the physical manifestation requirement is more relaxed where, as here, the alleged emotional distress arises from an assault. *Id.* (citing *Olivero v. Lowe*, 995 P.2d 1023, 1026 (Nev. 2000)).

In their reply brief, the defendants concede that Peter alleged sufficient facts to state an IIED claim. ECF No. 19 at 8. The complaint states the officers' conduct triggered Peter's PTSD, caused a relapse of his alcoholism, increased the frequency and severity of his seizures, and forced him to attend a rehabilitation program in Texas. ECF No. 1-3 at 53. Maria, by contrast, does not plausibly allege facts indicating that she experienced emotional distress. She states that she suffered "humiliation, mental anguish, anxiety, depression, severe mental or physical pain and/or anguish of mind, severe emotional distress, and is prevented from transacting her usual business and enjoyment." *Id.* This is the threadbare recital of the elements of a claim supported by only conclusory statements that *Iqbal* prohibits. 556 U.S. at 678. Even under *Olivero*'s relaxed pleading standard, Maria fails to plausibly allege that she suffered severe emotional distress. I dismiss her IIED claim but grant her leave to amend if facts exist to do so.

### 2. NIED

To recover for NIED under Nevada law, the plaintiff must have been: (1) located near the scene of an accident; (2) emotionally injured by observing the accident; and (3) closely related to the victim. *Grotts v. Zahner*, 989 P.2d 415, 416 (Nev. 1999). Peter and Maria bring NIED claims as bystanders based on each seeing the other being shot at, hit by projectiles, and forcibly

arrested. ECF No. 1-3 at 55. The Lykins argue they need not show that emotional distress caused physical injury where the emotional distress is secondary to physical injuries. ECF No. 10 at 17. But because they bring bystander claims, they are not direct victims of assault for the purposes of this claim. They therefore do not benefit from *Olivero*'s relaxed pleading standard and must allege physical symptoms resulting from their emotional distress. *Id.*

Allegations of Peter's alcoholism relapse and increased seizures are sufficient physical symptoms to survive a motion to dismiss. ECF No. 1-3 at 53. Maria, by contrast, does not plausibly allege that she suffered severe emotional distress, let alone that it caused physical symptoms. I dismiss her NIED claims but grant leave to amend if facts exist to do so.

### G. *Monell* Liability (Claims 1, 2, 3, 4, 5, 6, 13)

The Lykins assert several claims under § 1983 against LVMPD. LVMPD argues the Lykins fail to identify a challenged policy or practice that caused their injuries and instead rely on conclusory allegations. ECF No. 6 at 15. The Lykins counter that known prior incidents of LVMPD officers using excessive force and infringing free speech are sufficient allegations of a policy or practice to survive a motion to dismiss. ECF No. 10 at 21. Because it is unclear which policy or practice the Lykins challenge, I dismiss their § 1983 claims against LVMPD with leave to amend.

To state a claim for municipal liability under § 1983, a plaintiff must allege that a municipal policy or custom caused their constitutional injury. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Municipalities are not vicariously liable under § 1983 for their employees' actions. *Connick v. Thompson*, 563 U.S. 51, 60 (2011). Instead, *Monell* liability may be based on "(1) an official policy; (2) a pervasive practice or custom; (3) a failure to train, supervise, or discipline; or (4) a decision or act by a final policymaker." *Horton by Horton v.*

*City of Santa Maria*, 915 F.3d 592, 602-03 (9th Cir. 2019). When an unwritten or informal policy is used to establish liability, it must be "so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Gordon v. County of Orange*, 6 F.4th 961, 974 (9th Cir. 2021) (quotation omitted). A plaintiff must also show a direct causal link between the policy or custom and the constitutional deprivation. *City of Canton v. Harris*, 489 U.S. 378, 385 (1989).

The Lykins allege that LVMPD has a policy of "allowing its officers to violate the law with impunity" and a culture that its officers are above the law. ECF No. 1-3 at 6. They claim LVMPD "is aware of and has either explicitly or implicitly condoned or created a policy and practice of allowing Metro officers to deliberately violate the constitutional rights of persons" including their Fourth and First Amendment rights, and their comparable rights under the Nevada Constitution. *Id.* at 5. They allege LVMPD has failed to implement policies protecting these rights, and that officers appear unaware of their obligations to refrain from violating these rights. *Id.* at 6, 43. As evidence, the Lykins point to prior incidents where LVMPD officers used deadly excessive force and used force on protestors. ECF No. 1-3 at 3-4.

This evidence might support a *Monell* claim, but it is unclear from the Lykins' complaint what specific policies or customs they challenge. Conclusory allegations that a municipality has a policy or practice of violating constitutional rights do not provide the defendant with fair notice of what the claim is and the grounds upon which it rests. *Twombly*, 550 U.S. at 555. Alleging that its officers violate First and Fourth Amendment rights does not give LVMPD notice of whether the Lykins challenge the official policies surrounding use of force or policing protests, unofficial customs surrounding those practices, a failure to supervise officers on a particular issue, a failure to train them on a particular issue, or something else entirely.

The Lykins argue that *Monell* claims are fact-intensive and require discovery. ECF No. 10 at 19. But the complaint's allegations on their face are too vague and far-reaching to reasonably cabin the case going forward. *See McHenry v. Renne*, 84 F.3d 1172, 1177 (9th Cir. 1996) (holding a complaint should set forth "who is being sued, for what relief, and on what theory, with enough detail to guide discovery"). For example, the complaint alleges LVMPD has a policy of allowing officers to violate the Fourth Amendment right to be free from unreasonable search and seizure and the First Amendment right to freedom of speech. This theoretically calls into question LVMPD's training regarding how to conduct traffic stops or how to grant permits for demonstrations, despite their irrelevance to the harms alleged here. The complaint does not sufficiently identify which policies or practices they challenge. As a result, I dismiss the § 1983 claims against LVMPD but grant leave to amend if the Lykins can identify the policies they challenge.

### III.    CONCLUSION

I THEREFORE ORDER that the defendants' motion to dismiss (**ECF No. 6**) is **GRANTED in part**. I dismiss Captain Dori Koren from Claims 1, 2, 3, 4, 5, and 6 without prejudice. I dismiss Claims 6 and 9 without prejudice. I dismiss Maria Lykins from Claims 14 and 16 without prejudice. I dismiss LVMPD from Claims 1, 2, 3, 4, 5, 6, and 13 without prejudice. The motion is DENIED as to all other claims.

I further order that, if the Lykins choose to file an amended complaint curing the deficiencies of their complaint as outlined in this order, they will file the second amended complaint by May 1, 2023.

DATED this 29th day of March, 2023.

_____
ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE