UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| Peter Lykins and Maria Lykins,<br><br>　　　　　　Plaintiffs,<br><br>　v.<br><br>Las Vegas Metropolitan Police Department and Dori Koren,<br><br>　　　　　　Defendants. | Case No. 2:22-cv-01068-APG-BNW<br><br>**REPORT AND RECOMMENDATION** |

Before the Court is Plaintiffs' motion to enforce settlement and motion for attorney's fees. ECF Nos. 58, 59. Defendants opposed both motions at ECF No. 66. Plaintiffs filed replies in support of their motions at ECF No. 68. For the reasons discussed below, the Court grants Plaintiffs' motion to enforce settlement and motion for attorney's fees.

**I.　BACKGROUND**

This is a police misconduct case, in which Plaintiffs allege, among other things, that police officers unprovokedly fired pepperballs at them and falsely arrested them in retaliation for complaining about, and filming, the conduct. ECF No. 58 at 2. Plaintiffs contend that the parties reached a resolution in early August of 2023. *Id.* at 3. Defendants drafted the settlement agreement and sent it to Plaintiffs in October of 2023. *See* ECF No. 58-3 at 2. Two days later, Plaintiffs signed and sent back the settlement agreement. ECF No. 58-4 at 2.

In November and December of 2023, counsel for Plaintiffs, Ms. Rasmussen, and counsel for Defendants, Ms. Nichols, communicated frequently about the settlement checks via email. In November, Ms. Rasmussen emailed Ms. Nichols to ask about the status of the checks. ECF No. 58-5 at 4. Ms. Nichols responded that they were "waiting for Medicare clearance for [Mr. Lykins] to ensure there are no liens LVMPd [sic] has to pay out." *Id.* at 3.

In December, Ms. Rasmussen reached out to Ms. Nichols, stating: "I need the Lykins Checks ASAP. This is way longer than it should be taking." *Id.* Ms. Nichols responded that they

could not issue Mr. Lykins' check until Medicare confirmed that there were no liens. ECF No. 58-6 at 2. She also wrote that LVMPD had submitted a form, and that Mr. Lykins could submit a form too, which counsel had attached to the email. *Id.* Ms. Nichols noted that she would ask for Ms. Lykins' check to be processed. *Id.* Ms. Rasmussen eventually sent over a filled-out Medicare form. ECF No. 58-7 at 2.

Ms. Lykins received her settlement check on January 18, 2024. ECF No. 66, Exhibit A. To date, Mr. Lykins has not received his settlement check. Plaintiffs move the Court to enforce the settlement agreement, generally arguing that Defendants are required to issue Mr. Lykins his check under the agreement. ECF No. 58 at 1. Plaintiffs also seek attorney's fees for having to file these motions and reply. *Id.* at 2. Defendants disagree, generally arguing that federal law prohibits them from issuing Mr. Lykins his check until they receive a formal notification that there are no outstanding Medicare or Medicaid liens. ECF No. 66 at 6.

## II. MOTION TO ENFORCE SETTLEMENT

### A. Jurisdiction to Enforce the Settlement Agreement

A federal court does not have inherent power to enforce settlement agreements entered into by parties. *K.C. ex rel. Erica C. v. Torlakson*, 762 F.3d 963, 967 (9th Cir. 2014). But it is "well established" that the court has authority to enforce a settlement agreement in litigation pending before it. *In re City Equities Anaheim, Ltd.*, 22 F.3d 954, 957 (9th Cir. 1994). Here, because the litigation between the parties is pending before the Court, it has the authority to enforce a settlement agreement.

### B. Enforcement of the Settlement Agreement

A settlement is a contract. *Knudsen v. Comm'r*, 793 F.3d 1030, 1035 (9th Cir. 2015) (citing *Jeff D. v. Andrus,* 899 F.2d 753, 759 (9th Cir. 1989)). Both its construction and enforcement are governed by principles of state contract law. *O'Neil v. Bunge Corp.*, 365 F.3d 820, 822 (9th Cir. 2004) (citations omitted). Here, Nevada contract law governs the analysis because the parties are litigating the case in this state.

Nevada law requires an offer and acceptance, meeting of the minds, and consideration to constitute an enforceable contract. *May v. Anderson*, 121 Nev. 668, 672 (2005). "A meeting of the

minds exists when the parties have agreed upon the contract's essential terms." *Certified Fire Prot. Inc. v. Precision Constr.*, 128 Nev. 371, 378 (2012) (citation omitted). "Which terms are essential [i.e., material] depends on the agreement and its context and also on the subsequent conduct of the parties, including the dispute which arises and the remedy sought." *May*, 121 Nev. at 672 (internal quotation marks and citation omitted). Importantly, a court cannot enforce a settlement agreement when "material terms remain uncertain." *Id.* This is because the court "must be able to ascertain what is required of the respective parties." *Id*.

Here, the parties seemingly agree that a settlement agreement was formed. In their response brief, Defendants state, "[t]he parties entered into a settlement agreement in October 2023." ECF No. 66 at 3. Indeed, Defendants drafted the agreement (offer), which Plaintiffs signed and returned (acceptance). ECF No. 58-3 at 2; ECF No. 58-4 at 2. The agreement constituted an exchange of promises, in which Defendants would pay Plaintiffs a sum of money in exchange for Plaintiffs releasing their claims against them (consideration). Still, the Court considers whether there was a meeting of the minds, *i.e.*, whether it can ascertain what is required of each party under the agreement.

The agreement is five pages long, excluding signatures, and contains provisions such as:

- "The Defendants shall pay Plaintiff Maria Lykins One-Hundred Fifty Thousand Dollars and NO/100 ($150,000.00) and Plaintiff Peter Lykins One-Hundred Fifty Thousand Dollars and NO/100 ($150,000.00) . . . ."
- "Defendants shall pay Plaintiffs within thirty (30) days of receipt of: (1) Defendants' receipt of an IRS Form W-9, the form of which is attached as Exhibit A, properly completed by Plaintiffs and Plaintiffs' counsel; and (2) Plaintiffs' execution of this Agreement."
- "The Parties agree to dismiss with prejudice all of each Party's claims in the Complaint and Counterclaim . . . ."
- "Plainitffs does [sic] hereby fully release, acquit, and forever discharge the Defendants . . . ."

- "Plaintiffs hereby expressly agree to hold harmless, indemnify, and defend Defendants . . . pursuant to the terms of the Settlement Agreement, from and against any and all losses, claims, demands, cause or causes of action or judgments of every kind and character, which may or could be brought as a result of a Medicare or other Federal, State, or local governmental lien, and/or Medicare's status as a secondary payer . . . ."

ECF No. 58-4. Here, the Court finds that no material terms remain uncertain because the agreement explains: (1) when Plaintiffs would receive the money, (2) how much money Plaintiffs would receive, (3) how the money would be disbursed; (4) the release terms; (5) how liens would be resolved, and (6) who would resolve the liens, if any. *Id.*; *see Certified Fire Prot. Inc. v. Precision Constr.*, 128 Nev. 371, 378, 283 P.3d 250, 255 (2012) (suggesting that time for performance, price, and scope of work are material terms to a contract). The Court also notes that Defendants issued Ms. Lykins her settlement check under this exact agreement. ECF No. 66, Exhibit A. So, the Court finds that it can enforce the settlement agreement here because there was a meeting of the minds, as the parties agreed upon the material terms. *See May v. Anderson*, 121 Nev. 668, 672 (2005).

**C. Interpretation of the Settlement Agreement**

While the Court finds that a valid settlement agreement exists between the parties, it still considers Defendants' arguments under principles of contract interpretation. Defendants do not provide legal theories to support their arguments or develop their arguments in any kind of detail. Nevertheless, as best the Court can tell, Defendants make two arguments. First, that the contract includes implied conditions precedent requiring (a) formal notification that there are no Medicare/Medicaid liens and (b) Mr. Lykins formally notifying Medicare of the settlement. Next, it appears that Defendants argue that it would contradict the principle that contracts be "lawful" should they be forced to issue the check without (a) receipt of such formal notification and (b) without Mr. Lykins submitting formal notice of the settlement, ECF No. 66 at 4–5. The Court disagrees with both points.

### i. Conditions Precedent

A condition precedent "is an event, not certain to occur, which must occur, unless its non-occurrence is excused, before performance under a contract becomes due." *Rimini St., Inc. v. Oracle Int'l Corp.*, 473 F. Supp. 3d 1158, 1208 (D. Nev. 2020) (quoting Restatement (Second) of Contracts § 224 (1981)). "Conditions precedent are disfavored and will not be read into a contract unless required by plain, unambiguous language." *Id.* (quoting *Effects Assoc., Inc. v. Cohen*, 908 F.2d 555, 559 n.7 (9th Cir. 1990)). When a condition precedent is not explicit in the contract, the Court should only infer the condition if it is "amply clear" from the contract's language. *See Las Vegas Star Taxi, Inc. v. St. Paul Fire & Marine Ins. Co.*, 102 Nev. 11, 12, 714 P.2d 562, 562–63 (1986).

In *The Power Company v. Henry*, the Supreme Court of Nevada considered whether the terms of a settlement agreement made payment to the plaintiff contingent on a company's generation of enough proceeds to pay the settlement amount. 130 Nev. 182, 189–90, 321 P.3d 858, 863 (2014). In affirming the district court's decision that "the settlement agreement must be enforced according to its clear language," the court found that the settlement agreement "unequivocally" stated that the defendants were required to pay the plaintiff "regardless of the sufficiency of the proceeds from the [company's] sale." *Id.* Similarly here, the agreement clearly states that Defendants will pay Plaintiffs within 30 days of receiving the signed agreement and their W-9 forms. ECF No. 58-4 at 4. Because there is no language to suggest that payment is contingent on receiving a formal notification that there are no Medicare/Medicaid liens, or that Mr. Lykins must notify Medicare of the settlement, the Court will not read these conditions into the agreement, and it will enforce the agreement according to its clear language.

In *Villare v. Geico Casualty Company*, a case factually similar to this one, the United States District Court for the Eastern District of Pennsylvania considered whether a settlement agreement made payment "contingent upon a letter from Medicare attesting [no liens]." No. CIV.A. 14-2288, 2015 WL 1312386, at *4 (E.D. Pa. Mar. 24, 2015). In finding that the agreement did not contain this condition, the court reasoned:

> The settlement agreement did not include any specific terms regarding Medicare liens and, in any event, the Villares have signed a release and indemnification agreement that explicitly covers Medicare liens. If Geico wished to make settlement contingent upon a letter from Medicare attesting that there are no current Medicare liens and/or that there will not be any future Medicare liens, it could have done so during the settlement negotiations, but did not.

*Id.* Similar to the instant case, that settlement agreement included an indemnification clause that specifically covered Medicare liens. ECF No. 58-4. It also lacked language requiring formal notification of no Medicare/Medicaid liens. *See id.* As that court noted, Defendants could have drafted the agreement to condition Mr. Lykins payment on receiving notice of no liens but did not do so. Thus, the Court finds that Mr. Lykins fulfilled his obligation under the agreement when he sent his W-9 and the signed settlement agreement to Defendants.

### ii. The "Lawful" Principle

One foundational principle of contract law is that "a construction which makes the contract lawful will be preferred over one which would make it unlawful." *Reno Club v. Young Inv. Co.*, 64 Nev. 312, 326, 182 P.2d 1011, 1017 (1947). First, Defendants state that "[p]ursuant to 42 C.F.R. § 411.24(i), LVMPD cannot issue settlement funds until they have received formal notification that no outstanding Medicare or Medicaid liens exist or that they are aware of the settlement in question." ECF No. 66 at 6. Second, Defendants state that "[a]ttorneys representing beneficiaries, or the beneficiary themselves, must report the case and subsequent settlement directly to Medicaid or correlated agencies." *Id.* at 5 (citing § 411.24(g)-(h)). It appears that Defendants are arguing that enforcing the settlement agreement as is, without requiring the formal notice of no liens or for Mr. Lykins to report the case, would make the contract unlawful because it would conflict with § 411.24.

Regarding Defendants' first statement, the Court has carefully reviewed Defendants' cited authority, including § 411.24(i), and does not find any language that suggests LVMPD must withhold settlement funds until it receives a notification about Medicare/Medicaid liens. Section 411.24(i) states, in part: "If Medicare is not reimbursed as required by paragraph (h) of this section, the primary payer must reimburse Medicare even though it has already reimbursed

the beneficiary or other party."[1] The Court understands this to mean that if Mr. Lykins has a Medicare lien, he is required to reimburse Medicare for the lien amount, and if he does not, LVMPD will be required to do so, even if they have already paid Mr. Lykins his settlement check.

While the Court understands that this regulation exposes Defendants to liability if Mr. Lykins does not reimburse Medicare (assuming a lien exists), it does not prohibit Defendants from issuing Mr. Lykins his settlement check. Moreover, the settlement agreement already addresses this issue. ECF No. 58-4 at 5. According to its terms, Plaintiffs will indemnify Defendants against any Medicare liens. *Id.* The settlement agreement is still lawful without this condition.

Regarding Defendants' second statement, the Court has also carefully reviewed Defendants' cited authority, including 42 C.F.R. § 411.24(g)-(h) and the link to Centers for Medicare & Medicaid Services ("CMS") that Defendants provided. *See* ECF No. 66 at 5. Like § 411.24(i), the language in § 411.24(g)-(h) discusses Medicare's right to recover payments. That provision does not say anything about the requirement of the beneficiary to report the case to Medicare. The CMS link does state that "Medicare beneficiaries, through their attorney or otherwise, must notify Medicare when a claim is made against an alleged tortfeasor with liability insurance. This obligation is fulfilled by reporting the case in the Medicare Secondary Payor Recovery Portal (MSPRP) or by contacting the Benefits Coordination & Recovery Center (BCRC)."[2] The site goes on to say that, when reporting a case in the MSPRP or to the BCRC, the beneficiary must provide his Medicare number. *Id.* But it is not clear how the language on that site makes it illegal for LVMPD's to issue the check until such notification is made.

Here, the settlement agreement is lawful as is. The absence of a clause that requires Mr. Lykins to report his claim to Medicare does not render the contract unlawful. As an aside, it

---

[1] Section 411.24(h) states: "If the beneficiary or other party receives a primary payment, the beneficiary or other party must reimburse Medicare within 60 days."

[2] *Coordination of Benefits and Recovery – Attorney Services – Reporting a Case*, CTRS. FOR MEDICARE & MEDICAID SERVS., https://www.cms.gov/medicare/coordination-benefits-recovery/attorney-services/reporting-case (last visited May 17, 2024).

appears that even if the Court were to order Mr. Lykins to notify Medicare of the settlement, Mr. Lykins would not be able to comply because he does not have a Medicare number, which is required according to the CMS website. *See* ECF No. 58 at 9. Moreover, counsel for Plaintiffs filled out, to the extent possible, the CMS form that Defendants requested. *See* ECF No. 58-7.

In sum, the Court will enforce the settlement agreement as it is written. Under § 1 of the agreement, the Defendants must pay Mr. Lykins $150,000 within 30 days of receipt of his W-9 and execution of the agreement. ECF No. 58-4 at 4. On October 17, 2023, Mr. Lykins, through his counsel, sent Defendants his W-9 form and the signed agreement. *Id.* at 2. It has been (much) more than 30 days, and Mr. Lykins has still not received his settlement check. Accordingly, the Court grants Plaintiffs' motion to enforce the agreement and orders Defendants to issue Mr. Lykins his check within 10 days of the filing of this order.

## III.   MOTION FOR ATTORNEY'S FEES AND COSTS

Plaintiffs move the Court, under its inherent authority, to award them reasonable attorney's fees incurred from seeking to enforce the settlement agreement. ECF No. 58 at 16. Specifically, Plaintiffs argue that Defendants should be sanctioned for acting in bad faith. *Id.* Defendants oppose the motion, arguing that they have not acted in bad faith. ECF No. 66 at 7. The Court need not decide the merits of these arguments because it awards the fees under the parties' settlement agreement.

"A court may award attorneys' fees to the prevailing party if [] a statute, rule, or contract authorizes an award . . . ." *CBC Fin., Inc. v. Am. Safety Indem. Co.*, No. CV-S-04-0547 DAE-GWF, 2007 WL 9753001, at *2 (D. Nev. May 2, 2007) (citing *McCarran Intern. Airport v. Sisolak*, 137 P.3d 1110, 1129 (Nev. 2006)). Section 7(d) of the settlement agreement states:

> Unless otherwise specifically provided for herein, each party hereto shall bear its own attorney fees incurred in the negotiation and preparation of this Agreement and any related documents. However, in the event that any action or proceeding is instituted to interpret or enforce the terms and provisions of this Agreement, the prevailing party shall be entitled to its costs and attorney fees, in addition to any other relief it may obtain or be entitled to.

Here, Plaintiffs moved to enforce the terms and provisions of the agreement by filing their motion to enforce settlement. Because the Court grants their motion, they are the prevailing party and entitled to costs and attorney's fees under the agreement.

## IV. CONCLUSION

IT IS THEREFORE ORDERED that Plaintiffs' motion to enforce settlement (ECF No. 58) and motion for attorney's fees (ECF No. 59) are GRANTED.

IT IS FURTHER ORDERED that Defendants must issue Mr. Lykins his settlement check within 10 days of the filing of this order.

IT IS FURTHER ORDERED that the parties are to meet and confer within 10 days regarding reasonable attorney fees. To the extent no agreement is reached, Plaintiffs are to file a memorandum of costs listing the reasonable attorney's fees they have incurred in seeking enforcement of the settlement agreement.

### NOTICE

This report and recommendation is submitted to the United States district judge assigned to this case under 28 U.S.C. § 636(b)(1). A party who objects to this report and recommendation may file a written objection supported by points and authorities within fourteen days of being served with this report and recommendation. Local Rule IB 3-2(a). Failure to file a timely objection may waive the right to appeal the district court's order. *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).

DATED: May 20, 2024

_____
BRENDA WEKSLER
UNITED STATES MAGISTRATE JUDGE